UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF NEW JERSEY
CLARKSON S. FISHER BUILDING
403 EAST STATE STREET
TRENTON, NEW JERSEY

RECEIVED

OCT 15 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

| | |
|---|---|
| NEAL A. COWE | CIVIL ACTION |
| PLAINTIFF | |
| | CASE NUMBER |
| V. | |
| ALL-TIME AUTO BODY | BREACH OF CONTRACT |
| J.E. AUTO WORKS | NEGLIGENCE |
| NRS \| LIFESPAN | PROFESSIONAL MALPRACTICE |
| BURKE & POTENZA | MEDICAL MALPRACTICE |
| McELROY, DEUSTCH MULVANEY & CARPENTER | LEGAL MALPRACTICE |
| RIKER, DANZIG, SCHERER HYLAND, PERRITTI | SET ASIDE SUMMARY JUDGMENT |
| OLD TIME AUTOMOTIVE ET. AL. | |
| DEFENDANTS | |

## COMPLAINT

## THE PARTIES

[ 1.] The Plaintiff Neal A. Cowe resides at 1136 North Parkwood Dr. Forest Park, County of Clayton  Georgia 30297 and is a citizen of the United States of America.

1

[ 2.] The Defendants All-Time Auto Body is located at 1320 Richmond Avenue Point Pleasant Beach, County of Ocean New Jersey 08742.


[ 3.] The Defendant J.E. Auto Works is located at 1600 Englishtown Rd. Old Bridge, County of Middlesex New Jersey 08857.


[ 4.] The defendant NRS|Lifespan Neuropsychological Rehabilitation Services is Located at Hovchild Plaza 4000 NJ-66 #331 Tinton Falls, County of Monmouth New Jersey 07753


[ 5.] The defendant Burke & Potenza is located at 600 Parsippany Rd. Suite #106 Parsippany, County of Morris New Jersey 07054.


[ 6.] The defendant McElroy, Deutsch, Mulvaney & Carpenter is located at 1300 Mt. Kemble Avenue  Morristown, County of Morris New Jersey  07962 - 2075


[ 7.] The defendant Riker, Danzig, Hyland & Perritti is located at 1 Speedwell Ave. Headquarters West Plaza Morristown, County of Morris New Jersey 07962.


[ 8.] The defendant Old Time Automotive is located at 730 US-9 Lanoka Harbor, Lacey Township County of Ocean New Jersey 08734-2214 To Wit: GAVIN COX.


## JURISDICTION


[ 9.] The Federal District Court Trenton, New Jersey 08608 has jurisdiction over this matter under 28 U.S.C. § 1332 in diversity of citizenship.

## CONTROVERSIAL DOLLAR AMOUNT

[10.] The Plaintiff states the controversial dollar amount $75,000.00 has been met.

## COUNT I

[11.] The Plaintiff's case is of Original Jurisdiction of Negligence from a Breach of Contract and Professional Malpractices that unfairly benefited the defendants, resulting in a Summary Judgment being entered in favor of the defendants in which they were not entitled to a Judgment as a matter of law in the case of 3:18-cv-49.

[12.] The Plaintiff had an underlying automotive case, where he did research from the Internet for a neutral independent party (All-Time Auto Body) to inspect a motor vehicle in which he had become sickened while eating dinner with his friend Ms. Jayne A. Moormann, in her recently purchased (suv newer) used automobile.

[13.] The Plaintiff's Internet search found Mr. Alan Picker of All-Time Auto Body Inc. in Point Pleasant Beach, New Jersey whom agreed to examine the vehicle and write a report of his inspection findings for the plaintiff for a fee of $200.00 dollars.

[14.] In or around the middle of August 2019 the Plaintiff went to All-Time Auto Body at 1320 Richmond Ave., Point Pleasant Beach contacted a Mr. Alan Picker in his Automotive Body Shop. The plaintiff explained to Mr. Picker that he has seen his video posted On-Line, of his recovery of a vehicle in Lavallette, N.J. during Super Storm Sandy, (internet video available.)

[15.] The plaintiff explained to Mr. Picker that the (herein after) is known as the (Moormann Vehicle) where it had become known, after the vehicle purchase that from a (Car Fax) that it had been in an accident, being a rear-end collision, was never disclosed by the seller " A&M Auto Brokers" but very relevant information from Ms. Moormann's nurse friend running the Car Fax Report, **Frazer 0055** and **Mike Prezwodek 05/04/2022 Deposition Ex. M P #3.**

[16.] On September 17, 2019 after having difficulty from the defendants counsel Attorneys, for defendant Moormann, and defendant A& M Auto, the Court had set a deadline of 10/28/19 to schedule the inspection date. The Plaintiff filed a Motion for injunctive relief <u>88</u> due to the uncooperative nature of the defendants missing June 28, 2019 and August 6, 2019 requests for an inspection, asked for equitable relief in which the Court Ordered on October 28, 2019 the Moormann vehicle is to be inspection within (30) days. .

[17.] The plaintiff has the right to inspect Moormann Vehicle since they were also reluctant to remove newspaper circulars from the front windshield or turn over certain documents, (Previous Vehicle Title) since Moormann's previous vehicle and purchased vehicle are Identical in every way except the Model year but also to present the vehicle for an inspection at All-Time Auto Body so the newspapers could be removed from the front windshield obstructing Moormann vehicle V.I.N. So it could be correctly identify **Cox dep. Ex. 11, 10/13/2020.**

[18.] In a letter dated October 29, 2019 directed to Mr. Alan Picker All-Time Auto Body now a defendant, the plaintiff identified the aspects of his complaint filed in the Federal District Court Trenton, New Jersey, regarding the Moormann Vehicle inspection specifically outlined in detail his cause of action, after he had become sickened in the Moormann Vehicle from a smell emulating from the heater core system along with an odor of gasoline on **01/02/2016.**

[19.] At that Hearing the Plaintiff offered to pay $200.00 for the inspection of the Moormann Vehicle and also to pay for this vehicle to be picked at the Moormann

Residence in Beachwood, New Jersey by a flatbed tow truck to bring it to All-Time Auto Body, approximately (10) miles away. The plaintiff knew the vehicle was not insured, assumed correctly not in running condition, since the defendant failed to drop the vehicle off at the scheduled time. The Court Ordered on 10/28/19 Inspection of Moormann Vehicle within (30) Days.

[20.] After a Hearing was held in Federal Court at Trenton, N. J. before the Honorable Lois H. Goodman U.S.M.J. the Court Ordered the defendants to have the Moormann vehicle inspected within (30) day(s) of 10/28/2019 and to pay the $200.00 dollar inspection fee, plus the flatbed tow truck expense and that the Plaintiff would receive a copy of the All-Time Auto Body's inspection report Id., **11/14/2019 transcript Pg.7, Lines 6-8 a copy of inspection report to each party.**

[21.] The Court Ordered the inspection date be set by October 28, 2019 where the plaintiff was present at the All-Time Auto Body shop when (herein after) defendants Riker, Danzig office secretary called the All-Time Auto Body setting the Moormann vehicle Inspection date for November 26, 2019 at 10:00 A.M., at 1320 Richmond Ave, Point Pleasant Beach New Jersey was a no show Id.

[22.] The plaintiff told All-Time Auto Body, the Attorney's and the Court that there was no law that requires the plaintiff, to be present during this inspection of the Moormann vehicle, since the plaintiff had no ownership, or vested interest in the Dodge Grand Caravan but was an injured party arising from being a passenger where there was an ominous smell inside the vehicle Moormann received she went back a week later complaining about this odor but the salesperson tried to cover up with cologne that Ms. Moormann smelled for days along with the ominous smell **Frazer 0061**.

[23.] The plaintiff was present with defendant Ms. Moormann when the Sales person described the vehicles condition and replaced mechanical components that was said to have been replaced by A&M Auto, as a disinterested third party to the sale; the plaintiff listened in on the conversation, and then checked the vehicle components as all of the replaced, named components looked newly replaced, most were found to have been already replaced by the previous owner's vehicle history reports from Atlantic Care and Pep Boys.

[24.] Ms. Moormann asked several times if the defendant A&M had a clean title before the time of her purchase, A&M answering in the affirmative each time he was asked, but after A&M collected the $4,000 in cash, A&M refused to give up the Vehicle and told Moormann to come back in a week because they didn't have the title, the plaintiff became suspicious an aware of the Bate & Switch process.

[25.] The Moormann vehicle soon fell into disrepair as she drove it to and from work, late night hours, from all of the components that were said to have been replaced by A&M. Ms. Moormann took time out of her day looking for a vehicle inspection to be done by the Old Time Auto Care 730 Rte. US-9 Lanoka Harbor, New Jersey but drove away after she found out she had to pay for an inspection, could have waited for Gavin Cox to return to waive the service inspection fee or schedule an appointment with OTA, Old Time Automotive.

[26.] Ms. Moormann's purchase led to costly repairs from being deceived by A&M Auto Brokers stating they had replaced certain parts but were inconsistent with the vehicle she looked at on the lot, and the one she received one week later that had noticeable paint defects and worn out parts, that were soon replaced by Ms. Moormann at her expense, including a Triple AAA for roadside assistance service program being afraid of breaking down on the Garden State Parkway, at night.

[27.] The defendants counsel (John Sullivan) for McElroy, Deutsch & Mulvaney represented A&M Auto Brokers whom filed a BRIEF in Opposition Nov. 7, 2109 was opposed to the injunctive relief sought; Motor Vehicle Inspection <u>89</u> by All-Time Auto Body the inspection date was set by the defense counsel for 10:00 A.M. November 26, 2019 never showed up at, All-Time Auto Body until 1:30 P.M..

[28.] On the inspection date of Nov. 26, 2019 the plaintiff was in the vicinity of the All-Time Auto Body waiting for the Defendants counsel to show up with the Moormann vehicle on a flatbed, since the vehicle, of this discrepancy was not able to move under its own power would explain why the defendant failed to drop the vehicle off at All-Time Auto Body, missing the several appointed dates now being as previously, No Show several times, the plaintiff then filed for Injunctive Relief.

[29.] The defendant failed to show up for the Court Ordered inspection at the designated appointment time or place, as agreed on, but more importantly this date and time was set by the defendants attorney's choosing, no one forced them into this appointment time. At All-Time Auto Body a Mr. Picker set aside his time for the vehicle, to be inspected at 10:00 A.M. on the 26th of November but the defendants never showed up at their appointment time as they had done previously.

[30.] The problem here was manufactured by the defense counsel not presenting the vehicle, on time were still unwilling for the [F]acts to become known as to the proximate causation of the plaintiff's illness was from the dilapidated condition this vehicle was received in. The plaintiff had view the vehicle for sale vehicle on the A&M lot felt the vehicle had been a bait & switch **Dep. M.P.  05/04/22 Pg. 68 Lines 24-25,** where now the newly replaced components appeared old and worn out, Mr. Pickers passed up on the inspection after defendants were (4) hours late.

[31.] The late arrival was assigned, according to All-Time Auto Body to an Employee only known to the plaintiff as <u>Danny</u>, apparently he did work for All-Time in their shop on a part time basis and would use All-Time Auto Body's tools and vehicle lift on their premises for the inspection under All-Time's Custody and Control, Mr. Picker was eventually paid, where he could have re-set the inspection date and time.

[32.] The plaintiff went back to All-Time Auto Body for the Inspection report that the Court Ordered that the plaintiff was fully entitled to. Mr. Picker refused to give up the inspection report, claims that <u>Danny</u> ran away with the report being All-Time company records, has not been seen since and All-Time has no idea where Danny was not believable to the plaintiff, since the inspection report was in the hands of Riker, Danzig, A. Mohan, refused to surrender the inspection report but PRAC had already acknowledged their liability **Frazer 0028 4/4/2016.**

[33.] The Plaintiff then contacted the defense Counsel of (Riker, Danzig) whom also refused to give the plaintiff a copy of the inspection report claiming they had only rented Mr. Pickers lift and bay area along with Danny for a few hours and had not received a copy, but was found to have paid All-Time Auto Body for the inspection report, but never received it, which in part is not a truthful statement and constitutes an unresolved material fact.

[34.] Mr. Picker of All-Time Auto Body was solely responsible for the Custody and Control of the Inspection Report, even though Mr. Picker did not give his opinion. Mr. Picker was Negligent from his actions, he is not being held responsible from his words, but in his deeds since the report was never given to the plaintiff, the defendants failed to comply with a hearing decision made on 11/14//19 the Court Ordered; the plaintiff receive a fair and legible copy of the inspection.

[35.] Mr. Picker never personally inspected the vehicle, due to attorney negligence therefore has no knowledge or information relevant pertaining to the underlying

8

case, but was negligent in allowing his employee <u>Danny</u> to escape the premise's with All-Time Auto Body Company records in which up until now have been irretrievable, that had been so Ordered by the Federal District in the Plaintiff's case caused great irreparable harm and damage to the plaintiff's case, being uninspected Demands compensation in the amount of $500,000.00 dollars.

## <u>COUNT II</u>

[36.] On March 3, 2023 the Plaintiff contracted with defendant J. E. Auto Works Mr. John Enriquez for his expert opinion and knowledge about the subject of gasoline, since his regular business involved motor vehicle repairs and previously worked at the local gasoline station close to the plaintiff's old residence was told that the paper on gasoline was to be submitted in a case at Federal Court at Trenton, New Jersey 08608 Id.

[37.] The Plaintiff offered to pay the defendant for his time a cash payment of $200.00 dollars, for Mr. Enriquez to write a paper on the subject of gasoline where he accepted and agreed upon $200.00 for the offer, requested a cash deposit of $50.00 dollars where it was agreed upon a time frame and the parties exchanged contact names and telephone numbers and the money.

[38.] The agreement was that Mr. Enriquez would provide in writing, within (4) weeks an Opinion on the Compounds that make up Gasoline (petrol) it's dangers in being around gasoline vapors in a working environment in his employment field.

[39.] It was agreed by both parties that the contract would start on April 3, 2023 with the plaintiff showing up at J.E. Auto Works 1600 Englishtown Rd. Old

Bridge, New Jersey leaving $50 deposit with Mr. Enriquez for his acceptance to the offer, the parties agreed that the paper on gasoline would be due in the last week of March, being Friday March 31, 2023.

[40.] The plaintiff went back to J.E. Auto Works in the middle of March to inquire on the progress of the paper on gasoline and if Mr. Enriquez's needed anything in particular such as whom to he would direct his letter containing his expert opinion.

[41.] At that time and place in the Middle of March the plaintiff brought papers with him he had recovered from an Internet search regarding the properties of gasoline precautions and its dangers that were professionally written and published for Mr. Enriquez review, as this would give him assistance in terms of renewed regulations current changes and or further information recently issued he may be unaware.

[42.] The defendant Mr. Enriquez outright rejected to look at or to use the plaintiff's papers regulating gasoline, and that he was fine without the information provided to him by the plaintiff said; "He would be fine without the papers," and that the paper he was writing was proceeding along, on time and that it would be ready by the end of March as agreed upon.

[43.] Approximately two (2) weeks that went by, when the plaintiff went back to J.E. Auto Works in the middle of the last week in March being March 29, 2023 having met with Mr. Enriquez in his work area, asked if there was any problem with receiving the paper on gasoline he was writing on Friday March 31, 2023, again Mr. Enriquez said that the plaintiff could pick the paper up on Friday.

[44.] On Friday March 31, 2023 first thing the plaintiff went to J.E. Auto Works in which he was surprised Mr. Enriquez was not present in his Office or Garage area,

it was explained to his office assistant that Mr. Enriquez was supposed to have a paper written on gasoline, but instead he left a $50.00 cash refund from the deposit.

[45.] The Plaintiff asked where was Mr. Enriquez that he had an agreement with that he would write a paper on gasoline that was due today the 29th of April and Was Due in Federal Court at Trenton on April 4, 2023 had not been prepared by Mr. Enriquez of J.E. Auto Works leaving the plaintiff stranded at the last minute.

[46.] The Office girl called Mr. Enriquez then put the plaintiff on the telephone with him, was (videotaped) Mr. Enriquez said he was not at work on Friday's due to some type of personal family business, stated the Attorney's advised him not to submit the paper on gasoline, but obviously Mr. Enriquez knew before the due date of March 29, 2023 that he was not going to complete his end of the contract.

[47.] The plaintiff knew then, if this was some type of continuing medical condition where Mr. Enriquez was out of his business regularly for a family member every week on Friday Enriquez knew that he was not going to be at work on Friday when he told the plaintiff to return for his paper on gasoline regulations.

[48.] The defendant has caused the plaintiff irreparable harm, to the plaintiff's underlying case which was Dismissed from Mr. Enriquez's Non-Performance of the Contract whom could have turned down the Offer to write a paper on gasoline Or notified the plaintiff he could not, or would not complete his agreement, before the paper became due on April 4, 2023 the plaintiff Demands compensation in the Amount of $500,000.00 dollars.

<u>COUNT III</u>

[49.] On or about January 5, 2016 the plaintiff was seen by Dr. Lisa Wallner of Monmouth Gastroenterology Assoc. Freehold, New Jersey at that time Dr. Wallner diagnosed the plaintiff with Carbon Monoxide Poisoning (CO) from Jan. 2, 2016 incident (3) days prior.

[50.] Dr. Wallner noticed the patients Carboxyhemoglobins level was out of their normal range limit along with a positive cat scan for a ruptured bowel when seen at Raritan bay Medical Center Emergency Room Old Bridge, N.J. on January 3, 2016. Dr. Wallner sent "Cowe" on to see Dr. Markov who recommended surgery.

[51.] The plaintiff having his medical doctor's in Atlanta, Georgia left New Jersey to see his regular doctor and his heart doctors at 350 Country Club Rd. Eagle's Landing Stockbridge, Georgia 30281whom examined the plaintiff. Atlanta Heart determined that the plaintiff would first need a metal stent inserted in his heart order to perform intestinal surgery on his ruptured bowel from Jan. 2, 2016.

[52.] The plaintiff as still not functioning properly and continued to have tremors so he made an appointment with Neurology South Dr. Raghuram Kalonu M.D. of 913 Eagles Landing Pkwy, #100 Stockbridge, Georgia 30281where Tremors were diagnosed and a cat scan of the plaintiff's brain was performed, Dr. Kalonu found gases in the high part of the plaintiff's brain, in which an autopsy could determine exactly what type of gases had entered the plaintiff's system.

[53.] The plaintiff's Physician Dr. Gregory Erdelyn is located at 1104 Hospital Drive in Stockbridge, Ga. In which he determined as did Dr. Markov a surgical

procedure to remove a section of the lower intestine to correct his ruptured bowel and torso infection had (2) separate surgeries totaling 19 ½ hours were performed by Dr. Galloway at Emory University Hospital 1364 Clifton Rd. Atlanta, Georgia.

[54.] After a long recovery the plaintiff continued to not feel well so he contacted The Neurology Center for Epilepsy and Seizure by Dr. Amor Metha M.D. located at 470 County Road Rte. 520 Ste. 101 B Building B Marlboro, New Jersey whom diagnosed the Plaintiff with abnormalities of the Brain on 11/04/21 due to Carbon monoxide Poisoning (CO) a continuing Complaint from January 2, 2016 incident was then referred to Dr. Steven Greco of the Neuropsychology Rehabilitation Services.

[55.] The Neuropsychological Rehabilitation Service (herein after) NRS | Lifespan (herein after) NRS was located at 2100 N.J. #33Ste. 9-10 Neptune City, N. J. 07753 as a referral was made to Dr. Steven P. Greco PhD, Abn, where the plaintiff was seen for his medical visits, and where the (video conference by telephone) Zoom Calls were recorded unknown to the plaintiff at that time, on to a CD by Dr. Blouse served no purpose, or showed any benefit for the patient, never received any information from NRS Dr. Blouse has violated his 4th Amendment right to privacy.

[56.] In a scheduled 16.1 (LR.) Discovery conference hearing held May 16, 2022 in the federal district court 168 the plaintiff became aware that Dr. Blouse had been recording his conversations is her sessions, had sent that private information along to the defense counsel's, in violation of his constitutional right 4th Amendment in due process (to receive a copy) and 14th Amendment in equal protection to place an objection of unauthorized extraneous material along with privacy in HIPPA.

[57.] The NRS through Dr. Blouse released private confidential and  privileged communication between doctor and patient which was never subpoenaed objected to since the doctor patient is strictly confidential and is based on trust, otherwise how would the doctor give a proper remedy or the patient receive corrective treatment. NRS through Dr. Greco approved the released psycho analytical notes to be used in a civil suit before the plaintiff could file any objections.

[58.] The psycho-analytical notes are not admissible as evidence in a court of law unless the case was one of a criminal matter. The psycho-analytical cannot be used in the discovery process, but used only in the process of criminal litigation NRS placed him at a disadvantage at his deposition the following day where the Court already Ruled that a non-party to this suit has to Subpoena information 169 but the defense counsel used that information anyway that was obtained from NRS in the discovery process.

[59.] The NRS|Lifespan through Dr. Blouse have revealed certain case information to the defense counsel regarding Depositions, which is not in any way medically related, NRS cannot produce a Subpoena or Court Order that compelled them to send the defense counsel information and left the plaintiff without any protection, by giving Notice or copies of the doctor's reports and a CD in which the plaintiff was excluded from the process, NRS actions was not in the best interest of their client..

[60.] The plaintiff was given the word of Dr. Greco at his Neptune City, Office that "Under No Circumstance" would he NRS release any information disclosed to Dr. Blouse during a therapy session be released "Even under Subpoena" to the defense counsel, where the Plaintiff now felt free to discuss or disclose information related to his medical condition, but Dr. Blouse asked about his ongoing civil litigation which turned up being used against him at the (next day) at the 5/17 deposition.

[61.] The [L]aw states that even by Subpoena the person to whom is the subject of that requested information is made, has the right to be Notified prior to submission of their Subpoenaed Records, the party has to be given a chance to make an objection or challenge the submission under F.R.C.P. Rule 45 § 164.512 would have given the plaintiff half a chance to fight off the illegal use of analytical notes, and non-related medical disclosures were extraneous to his court case that placed the plaintiff at a disadvantage.

[62] At the first NRS meeting with Dr. Greco he was asked, and agreed to review the Medical records of the autopsy report of Jayne A. Moormann since she had continued to drive the vehicle, long after the plaintiff had become sickened on 01/02/16, died of a brain hemorrhage, 09/17/18 which could be considered close in a diagnosis to the brain injury the plaintiff had complained, Moormann drove the Vehicle right up to the end.

[63.] The defense counsel has rejected every attempt to uncover or have disclosed any information including the vehicle inspection, even after a federal injunction was approved for the plaintiff to receive a copy of that inspection report where nothing was ever received, but rather concealed the text recovered from Ms. Moormann's cell phone revealed among other things a gasoline smell **Frazer 0059** and a leaking exhaust pipe **Frazer 0061** that A&M welded in February weeks after it was discovered by A&M delaying the exhaust leak repair.

[64.] The NRS through Dr. Greco had the opportunity to examine medical records of Ms. Moormann but failed to do so, and could have negotiated an even exchange in return for the plaintiff's Medical records or receive some type of cooperation to make an unbiased evaluation to put the issue to rest was not ever resolved in the underlying case Moormann's Death from a Brain Hemorrhage as requirement under Rule 56 where there are disputes with more outstanding genuine material facts found Demands compensation in the amount of $500,000.00 dollars.

## COUNT IV

[65.] The defendants Burke & Potenza of 601 Parsippany Rd. suite 106 Parsippany /Troy Hills New Jersey represented Plymouth Rock Assurance Company (herein after) PRAC, and Jillian Wagner a Senior claims advisor located at 331 Newman Springs Rd. Lincroft, New Jersey.

[66.] On or about January 11, 2016 the plaintiff reported the 01/02/2016 incident to Rebecca Kennedy whom initiated a PRAC claim file 0777501427975 through Jillian Wagner whom sent out a monthly letter to the plaintiff stating the status of his claim file acknowledged an interview with Ms. Moormann but the plaintiff has never received a copy of that report taken by telephone.

[67.]In April the plaintiff received a status updated letter sent to his Georgia home from PRAC/Wagner dated April 4, 2016 clearly stated that gasoline and antifreeze were found in the Moormann Vehicle and the Jillian Wagner was sending out an Investigator to the Moormann residents, in defense of the claim PRAC sent Mark Bowes to the Beachwood, New Jersey home address on August 8, 2016 (photo.)

[68.] The plaintiff never received the Mark Bowes preliminary investigation report after sending certified letters mailed Ms. Wagner on February 17, 2017, February 23, 2017, March 28, 2017 there was no response from Ms. Wagner, these letters went unanswered for (1) full years since the Moormann vehicle had undergone a water pump repair at A&M on 01/21/2016 for the antifreeze leak.

[69.] The following month on 2/16/2016 the Moormann's vehicle went into the repair shop for a water pump replacement at Manahawkin Motors located at 200 East Bay Ave., Manahawkin, New Jersey 08050. The water pump that was repaired by A&M was fraud, because it is never recommended to repair a water pump, then charged her for a brand new water pump, as noted this costly repair went terminal within (3) weeks of A&M's fraudulent repair work where PRAC had that information **Frazer 00061, Cox Exhibit #9, A&M 000017.**

[70.] The New Jersey Consumer fraud act violation(s) states it is fraud to misrepresent the mechanical condition of a used car, or to fail to disclose (prior to the sale) any material defect in the mechanical condition of a used car which is known to the dealer, to represent that a used car or any component thereof, is free from material defects in its mechanical condition at the time of sale, see A&M's Bill of sale listed (2) charges for a Car Fax ¶ [15.] Moormann never received a copy.

[71.] The failure to disclose the used car had been previously damaged and that substantial repair or body work had been performed on it, when such prior repairs or body work has been performed on it, when such prior repair or body work is known by the advertiser (A&M) for the purposes of the Subsection, "substantial repairs or body work" having a retail value of $1,000.00 dollars or more violates the New Jersey consumer fraud act.

[72.] The Circle Dodge Auto Body had considered that the car of the previous owner "Mary Ann Perkins" which is one in the same as the Moormann vehicle as being Total loss from a rear-end collision was repaired then was sold at an automobile auction to Pine Belt Automotive of Toms River, New Jersey processed a Car Fax for A&M who charge Ms. Moormann twice the actual value as shown on her bill of sale, but never receive a copy from the seller A&M Auto Brokers.

[73.] The New Jersey Automobile Insurance Cost Reduction Act of 1998 made it a No-Fault State, which was to reduce the cost of Auto Insurance for most drivers by preventing most accident injury cases from languishing in the Court system and resulting in exorbitant "Pain and Suffering" awards for any injured parties allowing drivers and passengers to receive fair compensation for injuries, lost wages and out of pocket expenses faster than they would under an At-Fault system.

[74.] The new No-Fault insurance system allowed New Jersey drivers to choose from Two (2) types of insurance policies that would impact the ability to sue the At-Fault driver for additional damages under a basic or standard New Jersey automobile insurance policy, whether the plaintiff had a limited right to sue for his injuries, ended up with 20% co-pay out of pocket expenses, after 80% of the MVA (motor vehicle accident) was paid by Medicare.

[75.] The plaintiff was entitled relief, where the injury he suffered has never been disputed factually or insinuated that there was any other cause of injury, the (2) insults came from Gavin Cox and Attorney Sullivan about the noticeable 17" X 5" wide by 4" deep surgical wound in the plaintiff's torso, from his bowel being ruptured was segmented where a surgical opening (flap) ran from his sternum to his hip line.

[76.] The defense counsel disputes all of the doctors medical opinions, all off the depositions and testimony including from (3) or more doctors who correctly diagnosed CO poisoning within a reasonable time of incident 01/02/16. The most Significant diagnosis came from Amor Mehta M.D. Neurology Center for Epilepsy Seizures, who had connected the patient diagnosis injuries to the suspect vehicle.

[77.] The medical expenses and or other economic losses incurred by anyone who is covered under their policy will be paid after the car accident, up to the limits of the policy holders (P.I.P.) personal injury policy limits, regardless of who was at fault, this is where the type of policy Moormann had was never disclosed by Jillian Wagner, PRAC, and certainly their attorney's Burke & Potenza never disclosed which policy Ms. Moormann purchased.

[78.] In New Jersey the motor vehicle drivers are required to purchase the (P.I.P.) in order to cover their own injuries and losses, regardless of who is at-fault for an accident. Each No-Fault State operates under different Regulations and Statutes, so the automobile insurance requirements and rules for who pays and under what circumstances will vary depending on the State.

[79.] Under the Basic Policy, New Jersey drivers are bound by a Limited Right to Sue the At-Fault driver only if the accident has caused the Loss of a body part, Significant disfigurement, Significant Scarring, Permanent Injury (meaning the affected body part has not healed to allow normal function, and it's not expected to,) Id.,

[80.] Under these specific circumstances the plaintiff suffering from all of these named conditions would have the right to sue the At-Fault driver for "Pain and Suffering" and other economic damages that are not covered by the insured parties (P.I.P.) reference insurance … tsofnj.com.

[81.] The defendant Ms. Moormann "was not even home yet" text got someone to look at the van, (Manahawkin Motors) "He's telling me that it's a leaking fuel injector." Ms. Moormann has an appointment for 9:30 tomorrow morning for an official diagnosis. Ms. Moormann spent money on changing the fuel injectors on 2/16/2016 Manahawkin Motors which were said to have been changed, by A&M **Cox dep ex. 20** but when she arrived home, she went back outside and could still smell Gasoline, **Frazer 0063.**

[82.] If the At-Fault driver has an insurance policy that includes bodily injury liability coverage, his or her policy would pay the expenses first up to the limits of the Moormann P.I.P. policy, of $250,000.00 in coverage, does not cover plaintiff's $361.000.00 in medical expenses which logically should be cover by A&M Auto Brokers insurance, as secondary insurance since all of this is based on vehicle component parts being changed which was based in Fraud from hiding the Car Fax that indicates previous severe rear end collision damage on Moormann's vehicle.

[83.] All of the bad components, foul odors of antifreeze, gasoline and exhaust leak A&M welded after the plaintiff had become sickened, originated from the 2006 Dodge Grand Caravan that were represented as newly replaced parts, where it was A&M's negligence that cause the [F]ax from being withheld from the buyer, who never would have purchased the vehicle knowing that it had been in a rear-end collision accident, totaled by the insurance company, was then partially repaired omitting the needed repairs to the gasoline tank or gaskets was sold at auction Id.

[84.] The defendants Burke & Potenza never forwarded the request made too PRAC's for the insurance records from the previous insurer, where insurers share accident information, to avoid paying out twice on the same vehicle claim would consider the road worthiness of an accident vehicle along with an estimated value this again would be A&M's negligence as a small car dealership to know the vehicle history when reselling a used motor vehicle to the general public, otherwise A&M could be on the hook for a violation in passing the vehicle inspected when it had a defective exhaust pipe hole leak, by passed the State Inspection process.

[85.] The defendants Moormann & PRAC failed to turn over any information too the plaintiff whatsoever, regarding any Home owners insurance as a Policy Rider that would protect the defendant due to insufficient insurance coverage or find any other family members may provide, in an overlapping vehicle policy that would protect the homeowner from their property being held at risk from being under insured or not covered sufficiently for an accident claim Demands compensation in the amount of $500,000.00 dollars.

# COUNT V

[86.] The defendants McElroy, Deutsch, Mulvaney & Carpenter's representative John T. Sullivan presented himself as A&M's attorney for Michael Prezwodek who represented himself as an Owner of a small car dealership, A&M Auto Brokers a Used Car Dealership in trading in wholesale automobile and A&M maintenance worker, who sells desirable cars that are dependable and considered "Real Gems," **Exhibit MP-4, & MP-5, 5/4/2022 deposition.**

[87.] On January 7, 2019 the defendant's Counsel John T. Sullivan representing fore mentioned McElroy, Deutsch, Mulvaney & Carpenter filed a motion in lieu of "a more formal submission in opposition" to the Plaintiff's Motion for Injunctive Relief "Inspection of a Motor Vehicle" and cancellation of January 7, 2019 deposition, due to snow and inclement weather conditions in Morristown, Northern New Jersey where the deposition were to be held.

[88.] Since the weather was beyond the plaintiffs control he unilaterally adjourned his deposition after notice to all parties, Attorney Sullivan told only half a truth, never indicated the winter weather was a key factor in the cancellation of this deposition on 01/07/2019. Defendants were given a (3) days Notice January 4, 2019.

[89.] In addition to the plaintiffs (3) day notice of cancellation due to a predicted warning of snow & icy conditions, the plaintiff eventually took his deposition but the defendants never submitted the inspection report after showing up 4 hours late is where the defendants have caused irreparable harm to the plaintiff, where the Defendants have disposed of the Moormann vehicle under a Court Order.

[90.] The defendants have no inspection report in which they had refused to allow a plaintiffs expert mechanic to inspect the vehicle at any New Jersey location of the defendants choosing refused to answer the plaintiff letters have disposed of the subject motor vehicle, evidence to a civil [L]aw suit constitutes a case forfeiture.

[91.] Defendants misstate the [F]acts, where they refused to take any proper action in regards to the inspection agreement, Attorney Sullivan failed to call the All-Time Auto Body to say; that the defendants would be late is not only a common courtesy but a responsibility to notify "All-Time" since they had allotted time for the third time ¶ [16.,] was a NO SHOW at the appointed hour of 10:00 A.M. on November 26, 2019, Id, despite Judge Goodman's U.S.M.J. 10/28/19 (30) day(s) Court Order.

[91.] The defendants attorneys have failed to send along a copy of any inspection report can only support their issue as a partial truth, subject to their own conditions that the Moormann's Vehicle was inspected on November 26, 2019 but not at 10:00 A.M. and not by the Plaintiffs expert witness Mr. Alan Picker, but by a shop hand that apparently has no last name, has no telephone number, has no set hours, and cannot be located, is now claimed, to have run off with a Court Ordered Inspection Report now constitutes a criminal act being felony.

[92.] The plaintiff having offered to pay for all of the cost the Moormann Vehicles inspection would incur includes flatbed towing fee to and from the Moormann residence since the vehicle in not in any running condition and had absolutely no gasoline in the vehicle, due to years of sitting caused evaporation after being parked since September 2018 when the defendant Moormann died unexpectedly from a brain hemorrhage.

[93.] The Attorneys misstated or even possible misrepresented 11/14/19 Testimony in a Hearing the defense counsel requested Judge Goodman U.S.M.J. to Order the plaintiff to contribute a fee towards the expense of moving the vehicle, but the Court flat out refused Riker, Danzig request, where the Court Ordered the defendants to pay for all costs, the issue is another fictitious instance concocted by defense counsel to divert from the issues at hand, where the defendants claim that this put an unfair and undue burden on their defendant client, the plaintiff contends that they should have accepted the Offer made by the Plaintiff to pay for all their expenses when it was offered Id.

[94.] The [F]acts is the defendants in their defenses would unravel as soon as fresh gasoline was poured into the vehicle, where the defense counsel would have a major objection to the plaintiffs offering to fill up the Moormann Vehicle with gasoline, just prior to any inspection, a process in which the application of putting gasoline into a motor vehicle was fully intended, and is part of a normal everyday process, to put fuel into a motor vehicle for the purpose in which it was intended to be used in ordinary trade and commerce Id.

[95.] The defendants counsel were asked several times for All-Times Inspection report and to produce the 08/08/16 preliminary inspection report Jillian Wagner ordered when PRAC sent out Mark Bowes to the Moormann residents to inspect their insured's vehicle, since there was a safety issue concerning Ms. Moormann's vehicle, where she spent long hours in the vehicle to and from work and the constant flow of passenger that she transported including Grandparent, Children and Grand Children along with her friends, the report was never forth coming.

[96.] The insurer's performed poorly, Nationwide Ins. Co. sent out the plaintiff's complaint to their company of coverage Harleysville Ins. Co. never followed up to see if the company received the complaint, and was not answered within (20) days of Service made on A&M Auto Brokers PRAC never gave any alternative theory As to a proximate cause of the plaintiffs injuries, never suggested, arranged or even proposed to the plaintiff, be seen by insurance company Doctor's was Negligence.

[97.] The plaintiff was cooperative in taking his deposition that went on for (2) days, but then it came to the plaintiff giving the deposition, to witness Gavin Cox he had a room full of Attorney's waiting on-line "Face Time" after proper service was a no show, Cox never called regarding the fact that he was scheduled to give testimony on both days September 28 & 29. He was contacted by Riker, Danzig Anne Mohan, who spoke to Gavin Cox without the plaintiff present violates a code of conduct in ethical behavior, had made Cox a hostile witness against the plaintiff.

[98.] During the Cox deposition Attorney Sullivan was a constant interference whom constantly objected to the plaintiffs questions continued interrupting the legal process, had no reasonable answer when asked what the Objection was about could not state the basis for the attorneys objection, except for disrupting and preventing the flow of questions from being asked, trying to keeping the plaintiff off balance obstructs justice from ever being served.

[99.] The Attorney John T. Sullivan continued to interrupt a deposition of Melissa Frazer, where he interrupted the witness Cox Deposition and A&M's Salesperson Prezwodek deposition, now interferes with Frazer's testimony, to the point where the plaintiff called off the deposition from his undue interference considered to be harassment where Frazer is not even his client and was competently represented by her own counsel.

[100.] The plaintiff now looks into attorney Sullivan's background and finds out that his freewheeling style of adventure and contentious approach of continued interruption is his bold but bad behavior, that delayed the process without cause is found to be connected to the Magistrate Judge in that Judge Goodman was a long time associated partner in McElroy, Deutsch, Mulvaney, and Carpenter for the past (20) years had more than an appearance of judicial impropriety and that every decision made by the Magistrate Judge favored the defendants clients.

[101.] On or about May 17, 2022 the plaintiff sent attorney John T. Sullivan a fax directly to his Morristown Office, showing the career connections between the two Sullivan & Goodman on the internet, that they worked for the same law firm for a period of time, enough time to form a behind the scenes alliance, now questions the fairness of the Courts Decision in this case.

[102.] The defendant Sullivan continued to report to the Court that the plaintiff would be attending the Moormann Vehicle inspection, but that was also false, the plaintiff never changed his position as a guest, as a pedestrian, whom was invited into Moormann's vehicle became unknowingly injured, after having extensive medical treatment over several years, has no financial interest in the vehicle is where the defendants counsel cannot show any law that requires the plaintiff to go to the vehicle inspection or even the defendant (Owner.)

[103.] Attorney Sullivan went awry stating the plaintiff would be present at the inspection, but should have been estopped from the enjoyment he had telling Judge Goodman that the plaintiff would attend the Moormann Vehicle Inspection as the Attorney of record and on his own Motion failed to make a Court appearance has already stood up the plaintiff on a 08/08/16 hearing after plaintiff traveled 1,000 miles to this New Jersey Court, could have called and given notice to the plaintiff Demands compensation in the amount of $500,000.00 dollars.

## COUNT VI

[104.] The Defendant Riker, Danzig, Scherer and Perretti represented Jayne a. Moormann who has a defense Counselor Glen D. Curving Esq. for a consumer complaint issue whom purchased a 2006 Dodge Grand Caravan from A&M Auto Brokers has filed a cross-claim against A&M Auto Brokers/Diagnostics on the back of the Plaintiff's Complaint 1 Date Filed 01/02/2018.

[105.] The defendants claimed in their defense that the plaintiff has violated the [S]tatue of [L]imitations because the defendants did not receive the IFP Complaint until May, 16 2018. The plaintiff states that he became sickened as he ate in the defendants vehicle on 01/02/2016 at a fast food restaurant in Toms River, New Jersey, Ms. Moormann's counsel if possible would deny the plaintiffs of his rights.

[106] The Plaintiff filed his In Forma Pauperis, within the Statute of Limitations Deadline #1. On 02/22/2018 the Court 2 Order Granting application to proceed in forma pauperis directing the Clerk of Court to file the Complaint. Judge Peter G. Sheridan U.S.D.J. (mps) (Entered on 02/22/2018.) This allowed time for the application to be reviewed, by the Trial Judge approved and then returned.

[107.] The plaintiff received the return mail from the Court approving his IFP status, in the beginning of March 2018, that allowed (90) day(s) for good Service In which it is contended that Ms. Moorman had a certain duty of care owed to the plaintiff where, if you are a passenger in someone else's car, the driver's responsibilities includes providing their passengers with a reasonable duty of care.

[108.] The plaintiff contends Ms. Moorman owed her passenger that duty of care where Negligence is defined as the failure to act within the level of care that a reasonable person would exercise in the same circumstances. This can be a persons actions or omissions that are considered negligent, that is a fundamental concept of tort law, by being invited into Moormann's Vehicle this defendant had a legal duty to the plaintiff.

[109.] The defendant Moormann breached that duty when she suspected there was something wrong with her vehicle when an ominous smell first occurred in her vehicle when she left work in the early morning hours and put her heater system on to clear frost on the windshield and warmed up her vehicle. Ms. Moormann asked the plaintiff to sit in her vehicle at Walmart and see if he smelled anything funny.

[110.] The plaintiff never smelled anything funny at that time. The defendant also asked friends, family and a few church members if they smelled any type of odor where no one including the plaintiff smell a foul odor, dissatisfied she then took her vehicle to Gavin Cox who works at Old Time Automotive.

[111.] Mr. Cox was not at Old Time Automotive when Ms. Moormann arrived found out Mr. Cox was not there to waive a $29.00 service fee for the inspection of her vehicle then drove away abruptly and unexpectedly, in not waiting for Cox to return from a road test is where Ms. Moormann breached her duty, to wait for an (1) hour for cox to return, where her negligence cost the plaintiff (11) months of his time, waiting for a 21 ½ surgery in two sessions.

[112.] The Moormann vehicle was never inspected by Old Time Automotive even though Mr. Cox said he looked at the vehicle, no inspection was done. If Ms. Moormann had showed more patience, it is possible (OTA) Cox may have found the source of the smell since the manufacture Chrysler Corp. published extensive article's in repair manuals on material facts on what was causing the smell, would have found that the vehicle had other problems that caused the plaintiff harm Id.

[113.] The defendant's actions were the proximate cause of the harm the plaintiff suffered from, unaware of a leak in the muffler system, which could have been found by a mechanics examination along with the smell of gasoline and antifreeze the defendants actions were the cause-in-fact of that harm where Moormann found out most of her vehicle problems were identified in February by a mechanic after the plaintiff had become sicken in January.

[114.] The New Jersey law N.J.S.A. 39-4-129 leaving the scene after a known injury had occurred on 01/02/16 failed to warn N.J.S.A. 2A, 5.5 (a) then drove the plaintiff around the back streets of the fast food restaurant "Checkers" with the windows open to help him feel better, but Moormann knew it only made him feel worse, refused medical attention or Medical treatment.

[115.] The plaintiff asked to be driven to Community Medical Center in Toms River, approximately a 1/2 mile away but she refused, to take him for medical attention and or evaluation at the local Hospital, breached a higher degree of care since she now knew her passenger became sick inside her vehicle and he was unable to function enough to drive his own vehicle.

[116.] The defendants counsel after a notice of production of document has never sent to the plaintiff, the insurance companies recorded interview with Jayne A. Moormann conducted by Ellen Hammer for High Point Property & Casualty **(HP) Pgs. 165-167and Pgs. 217-231.**

[117.] The defense counsel has never produced or disclosed the initial interview conducted by Jillian Wagner, reporting it late by Ms. Moormann in disclosing information from the on-set of the accident on January 2, 2016 that was never reported it to Toms River, Police Department even after serious injury occurred.

[118.] The defendants counsel failed to submit the preliminary investigation report made by **Mark Bowes, HP 156-157,** which was conducted at the Moormann Beachwood, N.J. residents on 08/08/2016 requested by; Jillian Wagner Senior Claims Adjuster for Plymouth Rock Assurance Company a defendant additionally contacted the Civil Clerk's Office the day before default was to be entered 06/05/16, advising the Clerk's Office, Moormann has found an attorney, never contacted the plaintiff.

[119.] Melissa **Frazer** Administratrix of the Moormann estate, having a beneficial Interest in her Mothers estate was impeached for her prior inconsistent statements and false statements constitutes Perjury. Ms. Frazer made statements about thee dinner at the "Checkers" fast food restaurant where she was never present at any time in which her mother and the plaintiff ate dinner has given false testimony.

[120.] Ms. Frazer's statements constituting impeachment was based on her saying her Mother consulted her about her Air Conditioning was not believable, since (4) years had passed without saying one word about the Air Conditioning unit and that in the dead of winter, never explained why her Mother needed air conditioning in the month of January, were her false statements to protect her Mother's estate in which Frazer is the beneficiary, her statements are considered Perjury.

[121.] On May 17, 2022 Melissa Frazer sworn in for a deposition now under Oath falsely stated on Pg. 18 Lines 14-18 and Pg. 20 Lines 5 -15 that after (6) years contends that she found a rotten banana, in her Mother's vehicle which was causing all of the odors in the vehicle, such as the smell of Gasoline, Antifreeze, and Carbon Monoxide exhaust fumes from a hole in the muffler, but has never reported this to anyone.

[122.] Ms. Frazer's counsel was sent a published article on (ATSDR) Agency for Toxic Substances and Disease Registry, protects communities from harmful health effects related to exposure to natural and man-made hazardous substances. The agency responds to environmental health emergencies, investigate environmental health threats; conduct research on the health impacts of various hazardous waste sites, provide actionable guidance to State and Local health agencies.

[123.] The (ATSDR) set the standards for different levels of dangerous chemicals where, gasoline has additives in it to detect the presence of gasoline at .025 parts per million, meaning that even just a whiff of gasoline can be detected in an open air setting to give a warning of possible danger of a fire, explosion, or inhalation of toxic gases, apparently Ms. Frazer cannot tell the difference between a rotting banana and the United States Toxic Guideline's for the presence or smell of gasoline to prevent a person from being overcome by fumes suffering an injury.

[124.] The defendants Riker, Danzig made an appearance by Anne Mohan Esq. blocked the plaintiff subpoenas <u>Anderson v. Liberty Lobby</u> 477, U.S. 242, 248 (1986) would affect the outcome of a trial, where a dispute is considered an applicable standard of law in which a trial by jury was requested. The defendants cannot go to trail, because they would lose by forfeiture, in withholding certain exculpatory evidence from be inspected by an independent expert witness being an auto mechanic has prevented the original inspection report from being issued.

[125.] The defendants counsel Anne Mohan at her first appearance after oral arguments approaches the Magistrate Judge Goodman to inform her that her law firm is right here down the street in Trenton, New Jersey. Apparently appeals to the Judge to favor her case and not be equal to that of the pro se' plaintiff because he is not legal counsel, discriminates against due process in equal rights under the 4th Amendment clause of the Constitution.

[126.] The defendant Anne Mohan asked the plaintiff, "if he had contacted any other attorneys" after the trial Judge bifurcated his case, removing all personal injury claims of liability and damages into a case of negligence that would be held in negligence only, could have come from only one place, Ms. Mohan's inquiry of a previous suit in Boston regarding the plaintiff's crippling back injury.

[127.] The defendant attorney was told as soon as the trial judge had dismissed the personal injury aspect of his case the plaintiff contacted Napoli Sholnik law offices to represent him in a class action malpractice suit regarding the performance of his (Bard) Mesh, received a letter days later on June 9 that his law office would not be handling the plaintiff's mesh claim but have accepted thousands of others mesh injury claims, gave no reason for his actions. The [L]aw states that No Attorney can have a person dropped from a class action law suit without their Consent, Id.

[128.] The defendant Anne Mohan in open court accused the plaintiff of Trespass being on her clients property which is totally false, since the photograph that was taken was of Forked River Baptist Church in which the plaintiff was a church member at that time, had every right to be present has not broken any laws and to the contrary Ms. Moormann has covered up the V.I.N. vehicle identification numbers with old Newspapers and grocery store circulars to conceal the vehicles true identity violates the [L]aw.

[129.] Ms. Mohan made several appearances before the Court each time requested the plaintiff's telephone number as that was given to defense counsel at each court hearing. After giving the telephone several times the hearing always seem to start off with a request for the same question "what is your telephone number" this was a waste of time and considered harassment since the plaintiff's telephone number that was on the Complaint and each and every motion paper filed in this Court.

[130.] The plaintiff's telephone soon started to ring off the hook, the calls received seem too blow up the plaintiff's telephone with non-sense calls, constantly throughout the day requesting Medicare information over the telephone. This began to be quite a distraction and annoying to the point where the telephone was no longer being used as a functional telephone, was then deemed useless, shut off and was not being answered for any calls, "Leave a Message."

[131.] One number calling the plaintiff's line was a number from a Succasunna New Jersey, where the plaintiff did not recognize the parties name or their number belong to John T. Sullivan of McElroy, Deutsch, Mulvaney and Carpenter whom now complained to the Court the plaintiff did not answer his telephone where the attorney could not and did not want leave a recorded message that the hearing on 07/08/2018 would not be going forward, re-schedule for 08/08/2018 where the plaintiff's Diversity of Citizenship outweighs the Jurisdictional issues.

[132.] The next questionable issue was the defense counsel presented was a claim that the defendants never received any of the signed copies for medical requests for the plaintiff's treatment for sustained injuries was also false, at several points in time. Ms. Mohan sent along a prepaid mailer in which defense counsel would ultimately receive the prepaid mailer.

[133.] The defense counsel continued to claim to the Court they have not received signed copies to be sent along to the medical providers. The plaintiff then found out the prepaid mailer could not be sent by certified mail from the U.S.P.S. postal service mailer, used a plain white 8x10 envelope which was sent certified along with proof of mailing where Mohan continued to complain to the Court that the return mailer has not been received until the plaintiff produced his proof of mailing was dishonest and used as a ploy to discredit him.

[134.] On 05/04/2022 the plaintiff submitted the recovered text messages that Ms. Mohan received from Ms. Moormann's telephone correspondence with the plaintiff. The defendant was asked to resubmit the Moormann text due to the type size being too small and unacceptable (under10 picas) was refused by Ms. Mohan to be enlarged so it was readable, needed a magnifying glass to become legible.

[135.] The defendants violate the basis of (IFP) In Forma Pauperis approved by the Court on 02/22/2018, "Not to cost the IFP plaintiff's rules that would cost them unnecessary expense." The defendant A&M Auto Brokers (Mike Prezwodek) on 05/04/2022 deposition was the only party without a copy of the "Blue Book" so the plaintiff could question the defendant but Ms. Mohan refused the plaintiff to access "blue book" information that defendants has already used is a violation of the 14th Amendment the right to due process of law and equal protection of the laws.

[136.] The plaintiff's case was dismissed by Judge Sheridan with prejudice, and would deny any other motions the plaintiff had would be denied, without the Court ever reading the contents of the motion is so Prejudice and Bias, against the plaintiff's case that he could not receive a fair trial, Demands Compensation in the amount of $500,000.00 dollars.


## COUNT VII


[137.] The defendants Gavin Cox and Old Time Automotive arraigned for a deposition to be taken at Old Time Automotive, with the permission from the owner Jeff Nilon. The owner consented for Gavin Cox to take the deposition on Old Time Automotive property knowing Cox had not inspected Moormann's vehicle, at any time, but received text messages while on the clock.


[138.] The defendants have refused to answer the question, Who deposed Gavin Cox at Old Time Automotive and the date of the deposition, Demands Compensation in the amount $500,000.00 dollars.


[139.] On May 24, 2023 the lower federal district court the defendant A&M's Motion for Summary Judgment 195 was Granted by Judge Peter G. Sheridan U.S.D.J. Trenton, New Jersey.


[140.] On May 30, 2023 after receiving Notice the Plaintiff Neal A. Cowe filed Response in opposition to A&M's Motion for Summary Judgment 193 which was unfairly denied since the requirement under [R]ule 56 that all material [F]acts must be resolved and that no issues remain in dispute for litigation.

[141.] The plaintiff demands a trial by jury and the right to amend his complaint.

Dated this:
October 15, 2024

Neal A. Cowe
9 Taylors Mills Rd.
Post Office Box 24
Englishtown, New Jersey
      07726-0024
1(732) 648-9829