NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEAL A. COWE, <br><br> Plaintiff, <br><br> v. <br><br> ALL-TIME AUTO BODY, *et al.*, <br><br> Defendants. | Civil Action No. 24-9803 (RK) (JBD) <br><br> **OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the filing of four separate Motions to Dismiss *pro se* Plaintiff Neal A. Cowe's ("Plaintiff" or "Cowe") Amended Complaint (ECF No. 29, "Am. Compl."): one each filed by Defendants (1) Burke & Potenza (ECF No. 32, 32-1, "B&P MTD"); (2) McElroy, Deutsch, Mulvaney & Carpenter ("McElroy Deutsch") (ECF No. 31, 31-3, "MD MTD"); (3) Riker Danzig LLP ("Riker Danzig") (ECF No. 30, 30-1, "RD MTD"); and (4) NRS Lifespan ("NRS") (ECF No. 35, 35-8, "NRS MTD"). Plaintiff did not file a response to any of the four Motions. Also before the Court is Plaintiff's "Motion Request for a Special Master." (ECF No. 33.) No party filed a response to Plaintiff's Motion. The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, each of Defendants' Motions (ECF Nos. 30, 31, 32, 35) are **GRANTED**, and Plaintiff's Motion (ECF No. 33) is **DENIED** as moot.[1]

---

[1] Even if Plaintiff's Amended Complaint were not dismissed, this case would still not be an appropriate candidate for the appointment of a Special Master pursuant to Fed. R. Civ. P. 53. Rule 53 provides three limited bases under which a court may appoint a special master: (1) upon consent of the parties; (2) to hold trial proceedings or make findings of fact warranted by "some exceptional condition" or "the need to perform an accounting or resolve a difficult computation of damages;" or (3) to address pretrial and posttrial

## I. BACKGROUND

### A. *COWE V. MOORMANN*

All of the allegations in Plaintiff's Amended Complaint arise out of prior litigation—a different case, before a different judge, and against different defendants.[2] In that case, captioned *Cowe v. Moormann et al.*, No. 18-49 (D.N.J.) ("*Cowe I*") and filed on January 2, 2018, Cowe alleged that when he ate a meal with Jayne Moormann ("Moormann") in her car, he was exposed to a foul odor emanating from the car's heater that caused him to get sick to the point of hospitalization. (*See* Moormann ECF Nos. 1, 55).[3] Cowe brought a series of claims, including negligence, against Moormann, Plymouth Rock Assurance Company (insurance provider for Moormann's vehicle), Jillian Wagner (employee of Plymouth Rock Assurance Company) and A&M Diagnostics Used Auto Sales (seller of the subject vehicle). (*See Cowe I* ECF No. 55.) Following Moormann's death in the fall of 2018, Cowe replaced her as a defendant with her daughter and administratrix of her estate, Melissa A. Frazer. (*Cowe I* ECF No. 46.)

Litigation in *Cowe I* ensued for nearly six years. At the heart of the matter lay questions about whether Cowe had been exposed to any dangerous substances, and, if so, what those substances were, whether the vehicle was defective in some way, and whether any responsible party knew about said deficiencies when Moormann purchased the car. (*See Cowe I* ECF No. 184.) The Honorable Lois H. Goodman, U.S.M.J. (ret.) ordered the parties to inspect Moormann's

---

matters "that cannot be effectively and timely addressed by" any available judge. Fed. R. Civ. P. 53(a)(1). The court has discretion to appoint a special master. *See Glover v. Wells Fargo Home Mortg.*, 629 F. App'x 331, 337–38 & n.5 (3d Cir. 2015). None of the enumerated bases are present in this case, and, accordingly, no special master is warranted.

[2] The Court takes judicial notice of the docket and judicial opinions and orders in *Cowe v. Moormann, et al.*, No. 18-49. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 (3d Cir. 2014) (taking judicial notice of the contents of another docket).

[3] References to "ECF No. ___" refer to documents filed in this present case. References to "*Cowe I* ECF No. ___" refer to documents filed in the previous case, *Cowe v. Moormann*, No. 18-49 (D.N.J.).

vehicle and subsequently exchange expert reports. (*See id.*) Plaintiff was directed to produce an expert report by July 27, 2022, and "*if produced*, the defendant would produce answering expert reports, or alternatively, file dispositive motions by September 9, 2022." (*Id.* (emphasis added).)

In *Cowe I*, Cowe did not timely produce his expert report, and Defendants did not provide any responsive expert reports. (*Id.*) The Honorable Peter G. Sheridan, U.S.D.J. (ret.), considering Cowe's status as a *pro se* plaintiff, extended Cowe's deadline to produce an expert report until April 3, 2023, and observed that Cowe was a "frequent filer" and "not an unsophisticated litigator." (*Id.* at 5.)

Judge Sheridan's characterization of Cowe as merely a "frequent filer" is quite charitable and does not adequately capture Cowe's prolific, serial filings in federal courts. Indeed, on at least two prior occasions, Cowe filed a federal action in a futile attempt to re-litigate a prior judgment against him, just as he attempts to do here. *See, e.g.*, *Cowe v. Lynch, Brewer, Hoffman and Sands*, No. 04-11520, 2005 WL 66268, at *1 (D. Mass. Jan. 10, 2005) (dismissing Cowe's case against law firm defendants with prejudice after bringing a "confusing and not entirely intelligible complaint" with counts where it was "difficult to discern either the legal theory advanced in each of these counts or the defendant charged" arising out of Cowe's prior loss in Massachusetts Superior Court), *appeal dismissed* No. 05-1228 (1st Cir. Mar. 31, 2005); *Cowe v. Zoll*, No. 07-10771, ECF No. 8, at 1–2 (D. Mass. Aug. 9, 2007) (dismissing Cowe's pleading "complaining of an unfavorable judgment in his state court litigation" for being "vague and unintelligible, and substantially fail[ing] even the liberal notice pleading test of Fed. R. Civ. P. 8"), *aff'd sub nom. Cowe v. Zoli*, No. 07-2495 (1st Cir. Aug. 11, 2008).

Cowe has filed at least a dozen other federal cases, and *Cowe I* appears to be the only case of

3

Cowe's that ever progressed through significant discovery, let alone to summary judgment.[4]

In *Cowe I*, soon after Cowe missed his April 3 deadline, the defendants each filed Motions for Summary Judgment, arguing that, without expert testimony, Cowe could not prove his negligence claims. (*See Cowe I* ECF Nos. 188, 190, 193.) Cowe failed to file timely responses to any of the Motions, and Judge Sheridan granted each Motion in full, adopting the factual statements and arguments of each defendant. (*See Cowe I* ECF Nos. 194, 195, 200.) The case was finally terminated on November 21, 2023. (*See Cowe I* docket entry dated Nov. 21, 2023.)

### B. PRESENT ACTION

On October 15, 2024, less than one year after the *Cowe I* case was terminated, Cowe commenced this case by filing a new federal Complaint, *Cowe II*, against six new defendants. (ECF No. 1.) Three defendants—Burke & Potenza, McElroy Deutsch, and Riker Danzig (the "Law Firm Defendants")—are law firms that represented the defendants in the *Cowe I* case. Burke & Potenza represented Plymouth Rock Assurance and Jillian Wagner (Am. Compl. ¶ 66), McElroy Deutsch represented A&M Auto Brokers and A&M Diagnostics Used Auto Sales (together,

---

[4] All of Cowe's other federal actions were dismissed. *See, e.g., Cowe v. Boston Police Dep't*, No. 14-12581, ECF No. 9, at 6 (D. Mass. July 14, 2015) (dismissing Cowe's complaint for non-compliance with Fed. R. Civ. P. 8 and because the complaint is "not entirely intelligible and contains so many extraneous comments it is difficult to discern what allegations amount to factual claims, and what allegations are simply argument or speculation"), *aff'd* No. 15-2175 (1st Cir. May 25, 2016); *Cowe v. Emory Univ. Hosp.*, No. 17-4228, 2018 WL 11238510, at *2 (N.D. Ga. June 5, 2018) (dismissing Cowe's complaint because it "contains conclusory, vague, and fanciful allegations and does not set forth a basis for relief. Such a shotgun pleading is insufficient"); *Cowe v. Thornton*, No. 02-12313, ECF No. 13 (D. Mass. Feb. 7, 2003) (complaint dismissed); *Cowe v. Massachusetts*, No. 09-10724, ECF No. 5 (D. Mass. May 12, 2009) (complaint dismissed on jurisdictional grounds); *Cowe v. Commonwealth of Mass. Registry of Motor Vehicles*, No. 15-12308, ECF No. 14 (D. Mass. Dec. 18, 2015) (complaint dismissed after failure to show cause); *Cowe v. State of New Jersey Old Bridge Police Dep't*, No. 15-5718, ECF No. 7 (D.N.J. July 7, 2016) (complaint dismissed for failure to effect service of process); *Cowe v. State of New Jersey Ocean Cnty. Admin. Offices*, No. 15-5876, ECF No. 7 (D.N.J. June 3, 2016) (same); *Cowe v. Computer Repair Shop*, No. 17-5227, ECF No. 22, at 2 (D.N.J. Jan. 24, 2018) (complaint dismissed for lack of subject matter jurisdiction); *Cowe v. Equifax Credit Reporting*, No. 09-991, 2010 WL 925288, at *4 (N.D. Ga. Mar. 8, 2010) (case dismissed with prejudice after Cowe's failure to engage with discovery), *report and recommendation adopted*, No. 90-991, ECF No. 30 (N.D. Ga. Mar. 8, 2010), *appeal dismissed*, No. 10-1138, ECF No. 7 (11th Cir. Apr. 6, 2010).

"A&M") (*Id.* ¶ 87), and Riker Danzig represented Moormann, and later, Melissa Frazer, the administratrix (*Id.* ¶ 107). Three other defendants—All-Time Auto Body ("All Time"), J.E. Auto Works, and Old Time Automotive—are auto repair shops that were allegedly responsible for Cowe's unsuccessful attempts to get Ms. Moormann's vehicle inspected and produce an expert report in *Cowe I*. (*See id.* ¶¶ 15, 37, 142.) The final defendant—NRS Lifespan—is a neuropsychology provider who allegedly recorded virtual medical visits with Cowe and produced those recordings to the *Cowe I* defendants without Cowe's permission. (*Id.* ¶¶ 56–57.) In one way or another, Cowe holds each pending defendant partially responsible for his litigation failures in the *Cowe I* case, and seeks monetary damages of at least $500,000 as a result.[5]

The Law Firm Defendants each filed Motions to Dismiss the *Cowe II* Complaint for failure to state a claim. (*See* ECF Nos. 4, 6, 7.) On January 2, 2025, this Court dismissed the Complaint without prejudice and with leave to amend, for failure to comply with the notice pleading requirements of Rule 8. (*See* ECF No. 24.) On February 3, 2025, Cowe filed the subject Amended Complaint. (*See* ECF No. 29.) The Amended Complaint is nearly identical to the original Complaint, with many of the same allegations. Notably changed is the cover page of the Amended Complaint. In the first iteration, Cowe enumerated six causes of action, lodged against no defendant in particular: (1) Breach of Contract; (2) Negligence; (3) Professional Malpractice; (4) Medical Malpractice; (5) Legal Malpractice; and (6) "Set Aside Summary Judgment." (ECF No. 1 at 1.) The Amended Complaint replaces these six bases with one singular cause of action: "Invalidate Judgment in the Underlying Case Due to Fraud." (Am. Compl. at 1.)

The cause of action to "Invalidate Judgment In The Underlying Case Due To Fraud" simply

---

[5] At the end of each Count, Cowe demands compensation in the amount of $500,000. (*See id.* ¶¶ 36, 49, 65, 86, 106, 141, 144.) If the intention is to seek $500,000 *per count*, his demand amounts to $3,500,000 in total.

5

does not exist. Cowe cites no statute, no rule, and no caselaw to support this cause of action (and does not mention it again after the first page of his pleading). Instead, Cowe's Amended Complaint—like his first pleading, only more brazen—seeks to *de facto* appeal[6] or relitigate his prior attempt in hopes of a different outcome. Since Plaintiff is out of time to properly appeal the final judgment in the *Cowe I* action, here, *Cowe II* is a transparent contrivance to seek a judicial re-do.

Throughout the amended pleading, which spans 35 pages and 146 paragraphs (slightly *longer* than the 34 pages and 141 paragraphs of the original Complaint), Plaintiff inartfully cobbles together the following: a restatement of the original *Cowe I* action (*see, e.g. id.* ¶¶ 10–11), citations to documents in a record not presently before the Court (*see, e.g., id.* ¶¶ 16, 19, 21, 23), contentions against current defendants based on only events that took place during the *Cowe I* litigation (*see, e.g., id.* ¶¶ 88–91), allegations against parties who are not defendants in the current case (*see, e.g., id.* ¶¶ 24–27, 112–14), citations to a smattering of state and federal laws and legal concepts without context (*see, e.g., id.* ¶¶ 62 ("F.R.C.P. Rule 45 § 164.512"), 71 (New Jersey Consumer Fraud Act), 117 (N.J. Stat. Ann. § 39-4-129), 131 ("The Law states that No Attorney can have a person dropped from a Class Action law suit [sic] without their Consent"), 140 (14th Amendment)), and allegations of wrongdoing against no defendant in particular, just "defendants" broadly (*see, e.g., id.* ¶¶ 91–93).

Like the original Complaint, here, in *Cowe II*, the Amended Complaint is divided into seven "Counts" labeled as "Count I" through "Count VII." No "Count" sets forth any particular claim. Instead, these demarcations appear to loosely divide allegations as against different

---

[6] Cowe tried to appeal the *Moormann* action while he was still in the middle of it, but voluntarily dismissed the appeal for lack of jurisdiction. *See Cowe v. Moormann*, No. 23-1377, ECF Nos. 15, 16 (3d Cir. March 28, 2023) (dismissing the appeal pursuant to Fed. R. App. P. 42(b)). He did not appeal Judge Sheridan's grants of summary judgment.

defendants (which is not to say that allegations against the same defendant do not ever appear across different counts). Much like the original Complaint, the Amended Complaint is difficult to follow, if not altogether impossible to discern in its attempt to sufficiently allege legal wrongs committed by each defendant. This series of scattershot—but unspecified—allegations require the defendants, and consequently the Court, to engage in a never-ending quest down one rabbit hole into another.

At a high level, and in an attempt to cut through pages of allegations that are irrelevant or nonsensical (or both), the Court interprets the thrust of each Count as follows: Count I is meant to be construed against All-Time Auto Body for failing to provide an expert report. (*See* Am. Compl. ¶ 12.) Plaintiff discovered All-Time Auto Body online, and alleges that Mr. Alan Picker, who worked at All-Time, agreed to examine Moormann's vehicle for the *Cowe I* litigation and "write a report of his inspection findings for the plaintiff for a fee of $200.00." (*Id.* ¶ 13.) After "Defendants counsel" was late to the inspection, another All-Time employee named Danny allegedly conducted the agreed-upon inspection." (*Id.* ¶ 31.) Cowe then sought the inspection report from All-Time, but "Mr. Picker refused to give up the inspection report, claim[ing] that Danny ran away with the report . . . and has not been seen since he did the inspection." (*Id.* ¶ 32.) Plaintiff contends that "Mr. Picker was negligent." (*Id.* ¶ 35.)

Count II appears to be allegations against J.E. Auto Works for also failing to provide Cowe with an expert report. (*See id.* ¶ 37.) Plaintiff alleges that he "contracted" with John Enriquez of J.E. Auto Works to provide an expert opinion in the *Cowe I* action, based on his "knowledge about the subject of gasoline, since his regular business involved motor vehicle repairs and [he] previously worked at the local gasoline station." (*Id.*) Cowe alleges that he promised Mr. Enriquez $200 in exchange for a written opinion on the properties of gasoline, and gave a $50 deposit." (*Id.*

¶ 40.) After weeks of not hearing from Mr. Enriquez, Cowe went to J.E. Auto Works to pick up the report. (*Id.* ¶ 45.) However, "a $50.00 cash refund" was left for Cowe instead of the report. (*Id.*) Mr. Enriquez then informed Cowe over the phone that his attorney "advised him not to submit the paper on gasoline." (*Id.* ¶ 47.)

Count III contains allegations against NRS Lifespan for disseminating his medical records without consent. (*See id.* ¶ 56.) Plaintiff appears to bring claims under the Fourth and Fourteenth Amendments of the United States Constitution, alleging that his doctor at NRS recorded his medical appointment and sent the recording to defense counsel in the *Cowe I* action. (*See id.* ¶¶ 56–57.) Plaintiff also invokes HIPPA and alleges that he was told that no information from his appointment would be disclosed under any circumstances. (*Id.* ¶ 61.)

Count IV involves law firm Burke & Potenza, which represented Plymouth Rock Assurance Company and Jillian Wagner in the *Cowe I* action. (*Id.* ¶ 66.) After reciting, in detail, a series of allegations against Plymouth Rock and Wagner in their treatment of Ms. Moormann and her car, Cowe alleges that Burke & Potenza "never disclosed which type of [auto insurance] policy Ms. Moormann purchased," even after being requested to do so. (*Id.* ¶¶ 78, 85.)

In Count V, Cowe alleges that McElroy Deutsch in their role as counsel to the A&M entities failed to produce copies of their own inspection reports to Cowe during the *Cowe I* case, (*id.* ¶¶ 92–93), and, in a deposition "constantly objected to the plaintiff[']s questions [and] continued interrupting the legal process." (*Id.* ¶ 101.) Cowe also claims "judicial impropriety," noting that Judge Goodman, the magistrate judge assigned to the *Cowe I* action, worked at McElroy Deutsch for twenty years, and therefore "every decision made by the Magistrate Judge favored the defendants [sic] clients." (*Id.* ¶ 103.)

Count VI, lodged against Riker Danzig, who represented Moormann and Frazer in *Cowe*

8

*I*, alleges that the law firm failed to provide certain investigatory reports (*id.* ¶ 121), and that attorney Anne Mohan "accused the plaintiff of Trespass on her clients [sic] property which is totally false" and "harassed the plaintiff during several appearances before the Court, each time requested the plaintiff's telephone number as that was given to defense counsel at each court hearing." (*Id.* ¶¶ 133–34.) Plaintiff further claims that "Attorney Mohan refused the plaintiff to access [the Kelly] 'blue book,'" in alleged violation of the Fourteenth Amendment. (*Id.* ¶ 140.)

Count VII consists of only four paragraphs and alleges that, in the *Cowe I* case, Old Time Automotive arranged for a deposition to be taken from Gavin Cox, "knowing Cox had not inspected Moormann's vehicle at any time" and "refused to answer questions." (*Id.* ¶¶ 142–43.) Cowe further alleges that Judge Sheridan granted summary judgment against him, "unfairly deny[ing]" Cowe's response in opposition for being untimely. (*Id.* ¶¶ 144–45.)

The Law Firm Defendants and NRS each filed Motions to Dismiss. (*See* ECF Nos. 30, 31, 32, 35.) Cowe's deadline to file an opposition to the Motions filed by Riker Danzig and McElroy Deutsch was March 3, 2025, and his deadline to file an opposition to the Motions filed by Burke & Potenza and NRS was March 24, 2025. (*See* ECF Nos. 30, 31, 32, 35.) Cowe did not timely, or otherwise, respond to any of the pending Motions.

Cowe did, however, file a Request for a Special Master pursuant to Rule 53 on March 3, 2025 (his deadline to respond to the first Motions to Dismiss). (*See* ECF No. 33.) In the Motion, Cowe contends that the present matter is "complex," and, as such, a special master "would help manage disputes between the parties, and ensure equal compliance with the rules, advise the Court about any exceptional conditions to compel record evidence, investigate certain cases claims that cannot be effectively, timely, and fairly addressed." (*Id.* ¶¶ 1–2.)

## II. LEGAL STANDARD

### A. FEDERAL RULE OF CIVIL PROCEDURE 8

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although under Rule 8(a) plaintiffs are not required to set forth detailed factual allegations in their complaints, they have an "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief.'" *Id.*

"While a court should liberally construe the pleadings of a pro se plaintiff, the complaint must still comply with the pleading requirements of Rule 8." *Prelle v. United States*, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 246 (3d Cir. 2013)).

This Court may, *sua sponte*, dismiss a complaint for failure to comply with Rule 8. *Muhammad v. United States Bd. of Governors Postal Sys.*, 574 F. App'x 74, 74 (3d Cir. 2014). Such dismissal is appropriate when the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

### B. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

10

that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

#### A. THE LAW FIRM DEFENDANTS

Each of the three Law Firm Defendants filed Motions to Dismiss Plaintiff's Amended Complaint with prejudice. (*See* BP MTD at 1; RD MTD at 32; MD MTD at 1.) The Law Firm Defendants argue that they did not owe Cowe a duty in the prior litigation, *Cowe I*, because he never entered into an attorney-client relationship with them, and any interactions that he did have with them did not fall into one of the narrow factual scenarios that could give rise to duty owed by a lawyer to a non-client. (*See* BP MTD at 3; RD MTD at 16–19; MD MTD at 15–16.) The Court agrees. At its core, Cowe appears to take issue with the fact that the attorneys representing his adversaries in *Cowe I* acted in accordance with their duties to zealously advocate for their own clients, and did not assist him in his prosecution of his own case. These allegations are insufficient to establish any wrongdoing on the part of the Law Firm Defendants.

As explained above, it is unclear what legal claim, if any, Cowe seeks to bring against the Law Firm Defendants because he has not listed any causes of action other than "Invalidate Judgment in the Underlying Case Due to Fraud." (Am. Compl. at 1.) The Law Firm Defendants nevertheless construe Cowe's allegations as legal malpractice claims against them, since that claim

was listed on the front page of his previous complaint. (*See* ECF No. 1 at 1.)

A plaintiff in New Jersey must demonstrate the following elements in asserting a claim for legal malpractice: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that the breach was the proximate cause of any damages sustained; and (4) that actual damages were incurred." *Wealth v. Fox Rothschild LLP*, No. 23-3194, 2024 WL 3371354, at *6 (D.N.J. July 11, 2024) (citing *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001); *Sommers v. McKinney*, 670 A.2d 99, 103–04 (N.J. App. Div. 1996)).

Any claim by Cowe against the Law Firm Defendants fails at the first element because Plaintiff does not allege the existence of any attorney-client relationship. *See McGrogan*, 771 A.2d at 1193. Instead, as Cowe explicitly alleges in his Amended Complaint, each Law Firm Defendant was representing a defendant or set of defendants in the *Cowe I* action. (*See* Am. Compl. ¶¶ 66, 87, 107, 122.) Indeed, the Law Firm Defendants represented Cowe's *adversaries*, and New Jersey courts "are reluctant to permit a non-client to sue his adversary's attorney." *Jonas v. Gold*, No. 13-2949, 2014 WL 4854484, at *9 (D.N.J. Sept. 30, 2014) (citing *LoBiondo v. Schwartz*, 970 A.2d 1007, 1029 (N.J. 2009)), *aff'd* 627 F. App'x 134 (3d Cir. 2015). Although Cowe appears to have had somewhat extensive contact with various attorneys throughout the six years of *Cowe I* litigation, this conduct also does not evidence any sort of "implied attorney-client relationship." *See Wealth*, 2024 WL 3371354, at *7. Cowe only interacted with opposing counsel because he was representing himself *pro se*.

There are rare circumstances in which an attorney may owe a duty to a non-client, such as when a "lawyer intended or should have foreseen that the third party would rely on the lawyer's work," but Cowe has not alleged any instances of such a reliance. *See Petrillo v. Bachenberg*, 655

A.2d 1354, 1359 (N.J. 1995); *see also Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 265 (N.J. 2005) ("[I]f the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship."). Instead, Cowe alleges that the Law Firm Defendants erred by not providing him with certain documents like Moormann's underlying auto insurance policy and purported copies of expert reports. (*See, e.g.* Am. Compl. ¶¶ 78, 85, 93.) These are discovery disputes that should have been taken up in the *Cowe I* litigation—not here. *See Lease v. Fishel*, No. 07-03, 2009 WL 922486, at *7 (M.D. Pa. Apr. 3, 2009) (citing *Flores v. Emerich & Fike*, 416 F. Supp. 3d 885, 907 (E.D. Cal. 2007) ("It is impermissible to sue for prior violations of discovery rules in a subsequent lawsuit.")).

Defendant McElroy Deutsch also asserts that any claims against it are barred by the "litigation privilege" "because each claim is based upon actions taken by [McElroy Deutsch attorney] Mr. Sullivan during the underlying [*Cowe I*] litigation." (MD MTD at 17.) This privilege, however, applies to communications only, not *all* actions taken during litigation, as McElroy Deutsch contends. *See Baran v. ASRC MSE*, No. 22-4391, 2023 WL 2344634, at *8 n.2 (D.N.J. March 3, 2023) ("We note that the litigation privilege covers only communications, not actions."). New Jersey's litigation privilege applies to "communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 582 (D.N.J. 2001) (citing *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)).

Here, the privilege bars any liability as to the Law Firm Defendants premised on communications with Cowe or with the Court. Wading through Plaintiff's murky pleading, the Court concludes that the Law Firm Defendants cannot be held liable for, *inter alia*, "mis[stating]

or even possibly represent[ing] 11/14/19 Testimony" (Am. Compl. ¶ 95), "misstat[ing] the facts" as to the scheduling of the inspection appointment at All-Time Auto Body (*id.* ¶ 92), objecting during a deposition (*id.* ¶¶ 101–02), speaking to their own witness without Plaintiff present (*id.* ¶ 100), arguing to a judge during oral argument (*id.* ¶ 129), asking Plaintiff about contacting an attorney (*id.* ¶ 130), asking Plaintiff for his phone number (*id.* ¶ 133), and calling Plaintiff, who was not represented by an attorney (*id.* ¶ 134). These alleged communications between the Law Firm Defendants and "litigants or other participants authorized by law," including the Plaintiff and judge, are shielded from liability. *See Thomas*, 137 F. Supp. 2d at 582. Accordingly, this privilege provides an additional basis to dismiss Plaintiff's claims. The Law Firm Defendants' Motions to Dismiss are granted.

### B. NRS Lifespan

Plaintiff alleges that, as part of his recovery from being subjected to toxic fumes in Ms. Moormann's car, he was treated by Dr. Greco and Dr. Blouse at NRS. (Am. Compl. ¶ 56.) According to Plaintiff, telehealth appointments over Zoom "were recorded unknown to the plaintiff at that time, on to a CD by Dr. Blouse" and these recordings "served no purposes or showed any benefit for the patient,[and he] never received any information from NRS[.]" (*Id.*) At a discovery conference, Plaintiff alleges that he learned that Dr. Blouse had been recording the sessions and sending his "private information" to defense counsel in violation of both his "4th Amendment [right to] due process (to receive a copy) and 14th Amendment [right to] equal protection to place an objection of unauthorized extraneous material along with privacy in HIPPA [sic]." (*Id.* ¶ 57.)

Defendant NRS moves to dismiss these claims because (1) as a non-governmental actor, it cannot be liable for a violation of either the Fourth or Fourteenth Amendments, and (2) it did not

14

violate Plaintiff's privacy because Plaintiff signed a form allowing for the release of his medical records.[7] (NRS MTD at 4–8.)

It is well settled that a Fourth Amendment claim can only be brought against a government actor—not a private party like NRS. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Constitutional prohibition on illegal searches and seizures is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* The same holds true for the claims under the Fourteenth Amendment. *Gibbs v. Titelman*, 502 F.2d 1107, 1110 (3d Cir. 1974) ("It is well-settled that the fourteenth amendment applies only to actions of the 'States' and not to actions which are 'private.'"). Here, Plaintiff does not allege that NRS is anything other than a private company with no governmental ties. Additionally, to the extent that Plaintiff intends to bring claims against NRS pursuant to HIPAA, these claims also fail because HIPAA does not create a private right of action. *Beckett v. Grant*, No. 19-3717, 2022 WL 485221, at *3 (3d Cir. Feb. 17, 2022); *see also Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 460 (D.N.J. 2013) ("The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA complaint, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.").

Accordingly, all claims as to Defendant NRS are dismissed, and the motion to dismiss is granted.

---

[7] NRS attaches to its Motion to Dismiss a "HIPAA Compliant Authorization for the Release of Medical Records" that appears to be signed by Mr. Cowe. (*See* ECF No. 35-2 at 1–2.) The signed release authorizes NRS "to release the protected health information to" Anne M. Mohan of Riker Danzig. (*Id.* at 1.) The Court has not considered this exhibit in reaching its decision, and therefore need not determine whether it is sufficiently integral or authentic to be considered at the motion to dismiss stage. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### C. RULE 8

Plaintiff's Amended Complaint in *Cowe II* also fails to comply with Rule 8. The Court dismissed Plaintiff's original Complaint on Rule 8 grounds in January 2025, observing that the Complaint listed six causes of action on its front page, but "dr[ew] no connection between these causes of action, specific facts, or specific defendants." (*Id.* at 2–3.) The original *Cowe II* Complaint was also "split into seven 'counts,'" but those counts did not clearly correspond to any specific cause of action, or separate factual incidents. (*Id.* at 3.) That Complaint hardly referred to the Defendants by name, and liberally cited material that was not in the record. (*Id.*) After specifying the various deficiencies in Plaintiff's initial pleading, the Court allowed Plaintiff to amend his Complaint within 30 days. (*Id.* at 4.)

Plaintiff's Amended Complaint in *Cowe II* strays even further from Rule 8's requirements, and, as a result, the Court is compelled to dismiss the pleading on this ground as well. *See Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) ("[A] district court acts within its discretion when it dismisses an excessively prolix and overlong complaint, particularly where a plaintiff declines an express invitation to better tailor [his] pleading."). The pleading is filled with allegations against non-parties to the present action, including Moormann and A&M—defendants in the prior action. Plaintiff alleges that "defendant Moormann" breached a duty of care to him by letting him sit in her car, or by not properly having her car inspected (*see, e.g.*, Am. Compl. ¶¶ 112–14), and that A&M Auto Brokers never disclosed problems with the vehicle to Ms. Moormann before she bought it and negligently repaired the car (*see, e.g., id.* ¶¶ 24–27, 64, 69–70). The dozens of paragraphs devoted to irrelevant allegations make the Complaint "unnecessarily complicated and verbose." *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996). The Amended Complaint also obscures which causes of action are being brought, and against whom

16

each legal claim is asserted. Although the Amended Complaint is split between seven "Counts," there is no indicia of what cause of actions Plaintiff seeks to bring and who those causes of actions are brought against. As a result, Defendants and the Court alike are forced to simply speculate as to Plaintiff's intent. But "[t]he Court will not guess, and the Court will not leave Defendants to guess what claim they are defending against." *Chun v. Sushi Maru Express Corp.*, No. 17-6411, 2018 WL 3158815, at *3 (D.N.J. June 18, 2018) (dismissing count with no header and no stated cause of action); *see also Gear v. New Jersey*, No. 24-7176, 2024 WL 3293147, at *1 (D.N.J. July 3, 2024) (finding that it is not a court's responsibility "to conjure up questions never squarely presented to them").

Accordingly, the Amended Complaint is dismissed *in toto* pursuant to Rule 8.

### D. AMENDED PLEADINGS

Plaintiff's second attempt at a sufficient pleading fares no better than his first. However, the Court recognizes that Plaintiff proceeds *pro se*, and, as a result, the dismisses the Amended Complaint without prejudice. *See Martin v. Impact Health*, No. 23-4447, 2024 WL 329930, at *5 n.6 (E.D Pa. Jan. 29, 2024) ("[T]he Third Circuit has 'traditionally given pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure.'" (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993))). Since Cowe has already attempted amendment once unsuccessfully, Plaintiff, should he choose to file an additional pleading, must file a motion for leave to amend in compliance with Local Civil Rule 15.1 and explain why any further amendment would not be futile. *See also* Fed. R. Civ. P. 15(a)(2); *United States ex. rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). At a minimum, the amended pleading must clearly explain what causes of action he is asserting as to each defendant. *See Bulut v. JP Morgan Chase Bank, N.A.*, 2020 WL 2059956, at *5 (D.N.J. Aug. 29, 2020).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 30, 31, 32, 35) are **GRANTED** and Plaintiff's Motion for a Special Master (ECF No. 33) is **DENIED** as moot. Plaintiff's Amended Complaint (ECF No. 29) is **DISMISSED.** An appropriate Order accompanies this Opinion.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**ROBERT KIRSCH**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: April 7, 2025